**Robert CHERRY and Maria Cherry, Appellants,**

v.

**Brian M. McCALL and Rebekah McCall, Appellees.**

No. 04–02–00827–CV.

Court of Appeals of Texas, San Antonio.

April 14, 2004.

Rehearing Overruled May 10, 2004.

Carl Pipoly, Law Offices of Carl Pipoly, San Antonio, for appellants.

Curtis L. Cukjati, Troy S. Martin, III, Martin & Cukjati, L.L.P., Elizabeth Conry Davidson, William C. Egger, Jr, William C. Egger, Jr., a Professional Corporation, San Antonio, for appellees.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Appellants Robert and Maria Cherry bought a declaratory judgment action against Brian and Rebekah McCall. The McCalls moved for summary judgment, and the trial court granted the motion. The Cherrys appeal the judgment in four issues. We affirm the judgment of the trial court.

## BACKGROUND

The Cherrys bought a home from the McCalls. After the Cherrys bought the home, they discovered a walled-in room in the basement. The room was filled with trash, including rusty plumbing fixtures, bathtubs, sinks, commodes, boards, pipes, rocks, and used building materials. The trash was damp and contaminated with mold.

The Cherrys brought a declaratory judgment action, seeking declaration that (1) the McCalls breached the contract; and (2) the walled-in room constitutes a mutual mistake justifying rescission. The McCalls answered by general denial. The McCalls also asserted the "as is" provision of the contract as an affirmative defense and counterclaimed for attorney fees.

The McCalls then moved for summary judgment. In their response to the motion for summary judgment, the Cherrys moved for additional discovery time. The Cherrys also included an errata sheet of corrections to Mrs. Cherry's deposition testimony in their response to the motion for summary judgment. The trial court refused to admit the corrected testimony. The trial court then granted a take-nothing partial summary judgment in favor of the McCalls.

After the judgment was entered, the Cherrys amended their petition, adding negligent misrepresentation, fraud, and Deceptive Trade Practices Act causes of action. The amended petition also included affirmative defenses, presumably to the McCalls' claim for attorney fees.

The trial court severed the partial summary judgment from the McCalls' counterclaim for attorney fees and struck the Cherrys' causes of action in the amended pleading. The trial court then granted a second partial summary judgment in favor of the McCalls, establishing their right to

attorney fees. In a third partial summary judgment, the trial court awarded the McCalls $30,000 in attorney fees, making the judgment final.

The Cherrys moved for a new trial. The trial court denied the motion.

The Cherrys bring four issues on appeal, arguing that: (1) the trial court erred in granting a take-nothing partial summary judgment in favor of the McCalls; (2) the trial court abused its discretion in denying the Cherrys' request for more discovery time; (3) the trial court abused its discretion in failing to admit the corrected testimony of Mrs. Cherry; and (4) the trial court abused its discretion in striking the Cherrys' causes of action raised in an amended pleading after the partial take-nothing summary judgment was entered.

## SUMMARY JUDGMENT

■ In their first issue, the Cherrys argue that the trial court erred in granting a take-nothing partial summary judgment in favor of the McCalls.

A party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995). In reviewing the grant of a summary judgment, we must indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Johnson,* 891 S.W.2d at 644. In addition, we must assume all evidence favorable to the nonmovant is true. *Id.*

■ A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

The McCalls first argue that the Cherrys cannot prevail on this issue because they failed to attack on appeal all possible grounds supporting the summary judgment. We disagree. The McCalls argue in their motion for summary judgment that there was no mutual mistake, and the Cherrys are not entitled to rescission, for three reasons: (1) the Cherrys contracted to accept the property "as is," assuming the risk of any mutual mistake; (2) the Cherrys took the property "as is"; and (3) estoppel bars the Cherrys' claims. The McCalls also argue there is no evidence of breach of contract.

The Cherrys address all of these issues on appeal. They argue that (1) they are entitled to rescission because: (a) the "as is" clauses in the contract are not enforceable; and (b) the contract itself is unenforceable because it was made under a mutual mistake. They also argue that the trial court erred in failing to admit Mrs. Cherry's corrected testimony and that *had* the trial court admitted it, it would have raised a fact issue on the Cherrys' breach-of-contract claim. We hold that these arguments sufficiently address the grounds for summary judgment raised by the McCalls' motion. Accordingly, we move on to address the substantive issue of whether the trial court erred in granting a take-nothing partial summary judgment in favor of the McCalls.

The Cherrys allege that the McCalls breached the contract by "delivering [b]uyers a mold contaminated home, with a number of hidden rooms, containing defective plumbing and electricity." Therefore, to be entitled to a declaratory judgment that the McCalls breached the contract,

the Cherrys had to prove that the contract required the McCalls to deliver buyers a home without these defects. Here, however, the Cherrys contracted to accept the property "in its present condition," or "as is." *See Fletcher v. Edwards,* 26 S.W.3d 66, 75 (Tex.App.-Waco 2000, pet. denied) (construing an agreement to accept the property "in its present condition" to be an agreement to purchase the property "as is"). Thus, the Cherrys have taken "the entire risk as to the quality of the [property] and the resulting loss." *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.,* 572 S.W.2d 308, 313 (Tex.1978).

The Cherrys argue, however, that the "as is" clause is unenforceable under the "totality of the circumstances" test set out by *Prudential Insurance Co. of America v. Jefferson Associates,* 896 S.W.2d 156, 161 (Tex.1995). In that case, the court held:

> By our holding today we do not suggest that an "as is" agreement can have this determinative effect in every circumstance. A buyer is not bound by an agreement to purchase something "as is" that he is induced to make because of a fraudulent representation or concealment of information by the seller.... Also, a buyer is not bound by an "as is" agreement if he is entitled to inspect the condition of what is being sold but is impaired by the seller's conduct. A seller cannot obstruct an inspection for defects in his property and still insist that the buyer take it "as is". In circumstances such as these an "as is" agreement does not bar recovery against the seller.
>
> We also recognize that other aspects of a transaction may make an "as is" agreement unenforceable. The nature of the transaction and the totality of the circumstances surrounding the agreement must be considered. Where the

> "as is" clause is an important part of the basis of the bargain, not an incidental or "boiler-plate" provision, and is entered into by parties of relatively equal bargaining position, a buyer's affirmation and agreement that he is not relying on representations by the seller should be given effect.

*Prudential,* 896 S.W.2d at 162 (citations omitted). The Cherrys do not allege that the McCalls fraudulently induced them to buy the house or concealed knowledge about the hidden room. Nor do they allege that they were prevented from making their own inspection. Rather, they argue that their lack of sophistication, the fact that the "as is" provision was not negotiated but a standard boiler-plate provision, the high price the Cherrys paid for the property, and the fact that the defect was hidden are all factors indicating that the "as is" clause is unenforceable under the "totality of the circumstances."

█ We disagree. While there is some evidence indicating that Mrs. Cherry, who had never handled the details of purchasing a home on her own before, was less sophisticated than the McCalls, who owned rental properties, there is no evidence that the Cherrys and the McCalls entered into the contract from unequal bargaining positions or that the transaction was not made at arm's length. Additionally, there is no evidence to support the Cherrys' argument that the "as is" provision was not freely negotiated. In fact, Mrs. Cherry confirmed in her deposition testimony that she "agreed to purchase the property in its current condition" and that she "accepted the risk" that the property might be deficient.

> Where the "as is" clause is an important part of the basis of the bargain, not an incidental or "boiler-plate" provision, and is entered into by parties of relatively equal bargaining position, a buyer's

affirmation and agreement that he is not relying on representations by the seller should be given effect. *Id.* Because the Cherrys contracted to accept the property "as is," they cannot, as a matter of law, prevail on their breach of contract claim.

■■ In order to be entitled to a declaratory judgment that the contract was made under a mutual mistake, the Cherrys had to prove: (1) a mistake of fact, (2) held mutually by the parties, (3) which materially affects the agreed-upon exchange. *de Monet v. PERA,* 877 S.W.2d 352, 357 (Tex. App.-Dallas 1994, no writ). Under section 154 of the Restatement, however, a party bears the risk of mistake when the risk is allocated to him by agreement or when he knowingly treats his limited knowledge of the facts surrounding the mistake as sufficient. *Monet,* 877 S.W.2d at 359 (citing RESTATEMENT (SECOND) OF CONTRACTS § 154(a) & (b) (1981)). Here, the risk of mistake was allocated to the Cherrys by agreement when they contracted to accept property "in its current condition." Accordingly, their claim of mutual mistake fails as a matter of law.

■ The Cherrys argue, however, that the contract itself is invalid because a mutual mistake prevented the "meeting of the minds" necessary to the formation of a valid contract. *See Monet,* 877 S.W.2d at 357 ("When mutual mistake is alleged, the task of the court is not to interpret the language contained in the contract, but to determine whether the contract itself is valid."). We disagree. As discussed above, Mrs. Cherry confirmed in her deposition testimony that she "agreed to purchase the property in its current condition" and that she "accepted the risk" that the property might be deficient. Thus, the evidence confirms that a meeting of the minds *did* take place, i.e., though neither party knew of the hidden room when it

entered into the agreement, both parties agreed to place the risk of any unknown defects on the Cherrys.

Because the McCalls proved as a matter of law that the Cherrys are not entitled to a declaratory judgment on either breach of contract or mutual mistake, we hold that the trial court did not err in granting a take-nothing partial summary judgment in favor of the McCalls. We overrule this issue on appeal.

## REQUEST FOR ADDITIONAL DISCOVERY TIME

■ In their response to the McCalls' motion for summary judgment, the Cherrys requested additional discovery time "to demonstrate that defendant is not entitled to summary judgment." *See* TEX.R. CIV. P. 166a(g) (outlining procedure for requesting additional discovery time). The trial court implicitly overruled this request when it heard the motion for summary judgment without continuing it. *Clemons v. Citizens Med. Ctr.,* 54 S.W.3d 463, 468 (Tex.App.-Corpus Christi 2001, no pet.). On appeal, the Cherrys argue that the trial court's failure to grant their request constitutes an abuse of discretion.

■ We review a trial court's determination that there has been an adequate time for discovery under an abuse of discretion standard. *Specialty Retailers, Inc. v. Fuqua,* 29 S.W.3d 140, 145 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In deciding whether the trial court abused its discretion in denying a request for additional discovery time, we consider the length of time the case had been on file, the materiality of the discovery sought, whether the party seeking the continuance had exercised due diligence in attempting to obtain the discovery sought, and what the party expects to prove. *Carter v. MacFadyen,* 93 S.W.3d 307, 310 (Tex.App.-Houston [14th Dist.] 2002, pet. denied).

Here, Carl Pipoly, attorney for the Cherrys, states by affidavit that he needs additional time to discover evidence that the McCalls "had knowledge of the rooms hidden in the basement and had knowledge of the toxic trash heap." Pipoly fails to explain, however, why such evidence is material to the causes of action before the court at this time. In fact, whether the McCalls' had knowledge of the hidden room is *not* material to either mutual mistake or breach of contract as alleged in the Cherrys' petition. Thus, obtaining such evidence would not have assisted the Cherrys in defending against the motion for summary judgment. We hold, therefore, that the trial court did not abuse its discretion in denying the Cherrys' request. We overrule this issue on appeal.

### Errata Sheet

■ The Cherrys attached to their response to summary judgment two pages of corrections to Mrs. Cherry's deposition testimony. The McCalls objected to the submission of this errata sheet. The trial court sustained this objection and granted partial summary judgment in favor of the McCalls. On appeal, the Cherrys argue that the trial court erred in sustaining this objection.

■ We review whether a trial court erred in admitting or excluding evidence under an abuse of discretion standard. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion if it acts arbitrarily or refuses to follow guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985).

In her original deposition, Mrs. Cherry testified as follows:

Q: Mrs. Cherry, we're back from a short break. I'm going to hand you Exhibit 1. You previously testified regarding this document. Do you recall?

A: Yes, sir.

Q: Okay. And you are familiar with this document?

A: Yes, sir.

Q: Do you contend that Mr. and Mrs. McCall breached any provision of this document?

A. Yes.

Q. Okay. Will you please point out to me the specific provision that the McCalls breached?

A: I feel that some things were not disclosed.

Q: Is that your answer?

A: Yes.

Q: I'm going to object. That's nonresponsive.

Q: Can you point to any provision of that contract in which you think the McCalls did not comply with?

A: Okay. I would retract and say no. If—I didn't understand. I'll say that they did comply with this.

Q: The McCalls have complied with the real estate sales contract?

A: Yes.

Q: Okay. And you retracted your previous answer in which—

A: Yes.

Q: —you said they did not?

A: (Moving head up and down.)

Q: Okay.

A: If I understand it correctly.

Q: Okay. Are you aware that you've got a lawsuit on file—

A: Yes.

Q: —suing my client for breach of contract?

A: Yes, I am.

Q: Are you aware that that contract is the one referenced in your lawsuit?

A: Yes.

Q: Okay. But you're testifying here today under oath that the McCalls did not breach that contract?

A: If I can—

Q: Can you identify a specific provision in this contract that was breached as we sit here today by the McCalls? It's the same question you contemplated previously in an answer.

A: I know. I don't think I'm understanding it right.

Q: What portion of this document did the McCalls not comply with?

A: Ask me again, please. I'm sorry. I'm getting mixed up.

Q: What provision of this contract did the McCalls not comply with?

A: I think they complied with the contract.

Q: Okay. Thank you. That's—that's your testimony. You've thought about it for a long time and we've been on this question for several minutes now, and—and I want to be able to rely upon your testimony. That is your testimony? Mrs. Cherry, I'm not trying to trick you or anything else. I just—

A: Yes.

Q: I'm trying to get to the facts, and I need to understand exactly what your testimony is. And if that is your testimony, that's fine. I just want to make sure that there is no misunderstandings.

A: Yes.

Q: Yes what?

A: I think they complied to this.

Q: To Exhibit 1?

A: To this Exhibit 1.

The errata sheet altered Mrs. Cherry's testimony to say: "The McCalls did not deliver the kind of property that I purchased. I didn't intend to buy a house with hidden rooms full of debris, leaky sewer pipes, faulty wiring, and rodents."

In her original deposition, Mrs. Cherry also testified:

Q: A little bit earlier Mr. Martin had asked you to describe any ways in which the—the sellers, Mr. and Mrs. McCall, had breached the contract, and I'm trying to remember, but I believe you mentioned that you didn't see any ways that they had breached the contract; is that correct?

A: Correct.

Again, the errata sheet altered Mrs. Cherry's answer to say: "The McCalls did not deliver the kind of property that I purchased. I didn't intend to buy a house with hidden rooms full of debris, leaky sewer pipes, faulty wiring, and rodents."

The Cherrys argue that had the trial court admitted this evidence, it would have raised a fact issue on the Cherrys' breach-of-contract claim. We disagree. What Mrs. Cherry intended to buy fails to raise a fact issue on whether the McCalls breached the contract. Accordingly, the trial court did not err in excluding this evidence. We overrule this issue on appeal.

### AMENDED PETITION

The McCalls filed their motion for summary judgment on April 22, 2002. The trial court heard the motion for summary judgment on May 23, 2002. On June 5, 2002, the trial court entered a take-nothing partial summary judgment in favor of the McCalls on all claims asserted by the Cherrys. On June 11, 2002, the trial court severed the partial summary judgment from the McCalls' counterclaim for attorney fees. Also on June 11, 2002, the Cherrys amended their petition, adding negligent misrepresentation, fraud, and Deceptive Trade Practices Act causes of action. The amended petition also included affirmative defenses, presumably to the McCalls' claim for attorney fees. On

June 27, 2002, the trial court struck the Cherrys' added causes of action in the amended pleading. On appeal, the Cherrys argue that the trial court erred in striking their added causes of action. We review a trial court's decision to strike an amended pleading under an abuse of discretion standard. *Hardin v. Hardin,* 597 S.W.2d 347, 349–50 (Tex.1980).

Texas Rule of Civil Procedure 63 provides that parties may amend their pleadings at such time as not to operate as a surprise to the opposite party; provided that any pleadings offered for filing within seven days of the date of trial or thereafter shall be filed *only after leave of the judge is obtained.* TEX.R. CIV. P. 63. When a party files an amendment on the eve of trial without first seeking leave of court, we will not consider the party's complaint that the trial court abused its discretion in refusing to grant leave. *Corpus Christi Area Teachers Credit Union v. Hernandez,* 814 S.W.2d 195, 203 (Tex. App.-San Antonio 1991, no writ). Here, the Cherrys filed their amended petition not on the eve of trial but *after* trial. *See Goswami v. Metro. Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988) (holding that a summary judgment hearing is a trial within the meaning of Rule 63). Furthermore, the Cherrys failed to obtain leave from the trial court before filing. For these reasons, we hold that the trial court did not abuse its discretion in striking the added causes of action in the Cherrys' amended petition. Accordingly, we overrule this issue on appeal.

## CONCLUSION

Having considered and overruled all issues, we affirm the judgment of the trial court.